## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| REBEKAH MORRISON, on behalf of herself and all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| GEORGETOWN UNIVERSITY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff, Rebekah Morrison ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Georgetown University ("Georgetown"), based on her personal knowledge where applicable, as well as information, belief, and the investigation conducted by counsel.

### NATURE OF THE ACTION

1.     Plaintiff brings this Class Action Complaint against Georgetown for (i) failing to adequately secure and protect Plaintiff's and Class Members' highly sensitive personal and academic information. This includes data related to academic performance, admissions, and financial aid, such as full names, Social Security numbers, tax ID numbers, dates of birth, genders, ethnicities, marital statuses, disability statuses, immigration and visa statuses, religions, financial aid details (including reports on family marital and medical history), amounts and sources of aid from the university or other grants, and the amount of unsubsidized loans taken for each semester. Additionally, it includes detailed information on every Georgetown student enrolled in its law, medical, graduate, and undergraduate programs, their Spring 2024 GPA, applicant rosters,

admittance and enrollment status, payroll information for all university employees, and GRE and MCAT scores along with percentile rankings (collectively, "PII"); (ii) failing to comply with regulations and industry standards for protecting information systems containing PII; and (iii) unlawfully disclosing Plaintiff's and Class Members' PII.

2.    Georgetown offers a wide range of undergraduate and graduate academic and research programs. With degree offerings in 48 disciplines, the university enrolls approximately 7,500 undergraduate and 10,000 graduate students annually, hailing from over 135 countries.

3.    In providing its services, Georgetown collected highly sensitive information from prospective students, current students, and alumni, including financial aid details, Social Security numbers, academic records such as GPA, admissions data, and immigration information.

4.    Doug Little, the Chief Information Officer for Georgetown, reported that on October 17, 2024, the university notified affected students and alumni of a data breach. The breach occurred between 8 a.m. on Wednesday, October 16, and 8:30 a.m. on Thursday, October 17, 2024, following a maintenance and outage period in the GU Experience platform, Georgetown's student information system, which contained sensitive personal and academic data (the "Data Breach").

5.    According to a statement released by Georgetown, the data breach occurred due to an unintended setting change, which allowed a subset of users with GU IDs to access data that is typically restricted to administrative staff.

6.    Inexplicably, Georgetown has not yet fully or accurately informed those affected about the complete scope of the data breach.

7.    The Data Breach resulted from Georgetown's inadequate security measures and failures, including insufficient protocols for safeguarding sensitive information. These

vulnerabilities allowed unauthorized individuals to access Georgetown's systems and extract the personal and academic data of potentially hundreds of thousands of individuals. The compromised information includes Social Security numbers, GPAs, financial aid records, and sensitive details such as disability and immigration status. Georgetown's failure to implement stronger cybersecurity measures directly contributed to this breach, putting the personal data of students, alumni, and prospective students at risk.

8.    Georgetown's security lapses allowed users of the "GU Experience," the university's internal information platform, to log in and access an administrative version of the site through the sidebar. Public reports indicate that the platform included a page labeled "Insights," which housed a folder called "Data-warehouse." This folder contained multiple nested subfolders, each holding spreadsheets filled with sensitive personal academic and PII.

9.    The platform allowed any user to download and save this sensitive PII to their personal devices. As a result, the exfiltrated data remains in the possession of unauthorized individuals who accessed it, leaving the Plaintiff and Class Members vulnerable to exploitation of their personal and academic information.

10.    Per Georgetown, an initial investigation revealed that "29 current or recent Georgetown students may have accessed the unauthorized information."

11.    The data breach was directly caused by Georgetown's flawed system configuration and design, along with its failure to implement and adhere to fundamental security protocols. This negligence allowed unauthorized access to sensitive information, making the breach both foreseeable and preventable.

12.    Because of Georgetown's failures, unauthorized individuals were able to access and view Plaintiff's and Class Members' PII. Plaintiff's and Class Members' identities are now at

risk due to Georgetown's negligent conduct because the highly valuable PII that Georgetown collected and maintained which has now been accessed, acquired, and viewed by unauthorized parties.

13.    As a result of the Data Breach caused by Georgetown's negligence, the Plaintiff and Class Members face a significantly increased risk of future identity theft, both in the present and for the foreseeable future. The compromised Personally Identifiable Information (PII), including Social Security numbers, is particularly valuable and can be easily exploited for fraudulent activities. Consequently, Plaintiff and Class Members are vulnerable to various financial risks, including but not limited to criminals opening new financial accounts in their names, utilizing stolen PII to access government benefits, and filing fraudulent tax returns.

14.    Plaintiff seeks damages and injunctive relief requiring Georgetown to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit and identity theft monitoring to all Class Members. Plaintiff also seeks to recover damages and other relief resulting from the Data Breach, including but not limited to, compensatory damages, and declaratory judgment and injunctive relief to mitigate future harms that are certain to occur in light of the scope of this Data Breach.

## PARTIES

15.    Rebekah Morrison ("Plaintiff") is a citizen of the State of Massachusetts and current resident of the District of Columbia.

16.    On October 17, 2024, the Plaintiff received an email notification from Georgetown's Chief Information Officer (CIO), informing her that her "sensitive personally identifiable and academic information" had been compromised in the data breach. The email

4

explained that after a period of "maintenance and outage," unauthorized parties were able to access data that is typically restricted to administrative staff.

17.    Plaintiff is a graduate of Georgetown and part of their alumni network. Plaintiff provided Georgetown her PII in course of receiving her education at Georgetown.

18.    Defendant Georgetown University is a private university in Washington, D.C., with its principal place of business at 3700 O Street NW, Washington, D.C. 20057.

19.    Georgetown has eleven undergraduate and graduate schools, enrolling approximately 7,500 undergraduate and 10,000 graduate students each academic year.

20.    Georgetown offers degree programs in forty-eight disciplines including academic and research offerings. Georgetown's alumni network consists of hundreds of thousands of individuals.

## JURISDICTION AND VENUE

21.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d)(2), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Members of the Class defined below, and a significant portion of putative Class Members are citizens of a different state than Defendant.

22.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District, Defendant is a university in Washington, District of Columbia and conducts substantial business in this District, and a substantial portion of the violations, acts, and omissions giving rise to this action occurred in this District.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District, Defendant does business in this District

and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

**A.    Georgetown collected and maintained student and alumni PII.**

24.    Georgetown has full operation, control, and supervision over its systems, yet it configured and designed them without implementing adequate data security protections.

25.    Georgetown was entrusted with safely securing and safeguarding Plaintiff's and Class Members' PII.

26.    Georgetown failed to properly verify, oversee, and supervise the handling of Plaintiff's and Class Members' PII. This unencrypted PII, much of which was collected from Plaintiff and Class Members during the education application and enrollment process, was entrusted to the Georgetown with the expectation that it would be kept secure, confidential, and safe.

27.    Plaintiff and Class Members reasonably expect that a university like the Georgetown, entrusted with highly confidential information, will exercise the utmost care to keep their PII secure and confidential, use it solely for authorized purposes, and make disclosures only when properly authorized.

28.    Despite collecting and storing such sensitive PII, Georgetown failed to properly implement updates and maintenance as a result of which, unauthorized access to Plaintiff's and Class Members' PII was freely granted to all on its GU Experience Platform.

29.    Georgetown's negligence in operating and maintaining its systems allowed unauthorized parties to access spreadsheets containing sensitive personal information. These spreadsheets included, among other details, students' full names, tax IDs, dates of birth, gender, ethnicity, marital status, disability status, immigration and visa status, and religion. Additionally,

some spreadsheets contained financial aid records dating back to the 1990s, including comments made by university staff regarding financial aid amounts and details of students' family marital and medical history.

30.     The data included specific details of students' financial aid, such as how much aid they had received from the university versus federal or other grants and how much of an unsubsidized loan a student had taken out for a semester.

**B.     Georgetown's Failure to Comply with FTC Guidelines.**

31.     Georgetown is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act"), from engaging in "unfair or deceptive acts or practices in or affecting commerce." The U.S. Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

32.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

33.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no

34.     longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.

35.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity

on the network; and verify that third-party service providers have implemented reasonable security measures.

36.    The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

37.    Georgetown failed to properly implement basic data security practices. Georgetown's failure to employ reasonable and appropriate measures and to properly conduct scheduled maintenance allowed unauthorized access to PII, or to prevent the disclosure of such information to unauthorized individuals, as reflected by the sensitive Social Security numbers and other PII stolen, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

38.    Georgetown was always fully aware of its obligations to protect the PII of consumers, such as Plaintiff and Class Members, because of its business of obtaining, collecting, and disclosing PII as well as collecting, storing, and using other confidential personal and financial information as part of its operations as a university.

## C.    The Breach

39.    On or around October 16, 2024, Plaintiff's and Class Members' sensitive PII was compromised.

40.    In an email to Plaintiff and Class Members, Georgetown, through its CIO, announced that between 8:00 a.m. on Wednesday, October 16, and 8:30 a.m. on Thursday, October 17, 2024, unauthorized individuals accessed sensitive personally identifiable and academic

information of current and former students.[1] This breach occurred following a maintenance and outage period on Georgetown's student information system, the GU Experience platform.

41.    According to a statement released by Georgetown, the Data Breach occurred during "maintenance and outage period" of the "Banner" student information system.

42.    Ellucian operates "Banner," a software application used by higher education institutions, including Georgetown, to maintain student, alumni, and faculty information including financial data. Banner is used by thousands of educational institutions worldwide.

43.    According to a Georgetown statement, the Data Breach occurred after a scheduled "maintenance and outage period" caused by an "inadvertent setting change." Georgetown began notifying affected students and alumni during the afternoon of October 17, 2024. Georgetown has not been fully forthcoming with what particular forms of "sensitive personally identifiable and academic information" were exposed, and the scope of the Data Breach appears larger than what Georgetown initially publicized.

44.    Subsequently, reports in Georgetown's student newspaper publication, "The Hoya" emerged providing further details on the unauthorized disclosure of Plaintiff's and Class Members' PII.

45.    The Hoya reported that individuals could access the exposed data using a Georgetown login, allowing users to download and save this information to their personal devices.

46.    Highlighting the sensitive nature of the exposed Personally Identifiable Information (PII), The Hoya reviewed data that included graduates' personal details as well as information

---

[1] In an email to the student publication *The Georgetown Voice*, the Defendant's CIO explained that the data breach "occurred after a scheduled maintenance period, which took place from 4:00 p.m. on Friday, October 11, to 8:00 a.m. on Wednesday, October 16." This maintenance was part of "ongoing efforts to modernize Georgetown's network environment."

about their time as Georgetown students. This included records on academic performance, admissions, financial aid, Social Security numbers, and tax ID numbers.

47.    The Hoya reported that one spreadsheet contained sensitive personal information about students, including:

    a.    full names, tax IDs, dates of birth, and genders,

    b.    ethnicities, marital statuses, and disability statuses, and

    c.    immigration and visa statuses, as well as religious affiliations.

48.    Other spreadsheets reviewed by *The Hoya* included financial aid information for students dating back to the 1990s. These records contained:

    a.    comments from university staff on financial aid reports

    b.    details of financial aid amounts and sources (university, federal, or other grants),

    c.    specific details on unsubsidized loans taken by students for each semester, along with family marital and medical history.

49.    Another spreadsheet reviewed by *The Hoya* included:

    a.    GPA information of students dating back to the 1990s, and

    b.    detailed GPA records for all students enrolled in Georgetown's law, medical, graduate, and undergraduate programs as of Spring 2024.

50.    Additional files reviewed by *The Hoya* contained:

    a.    a roster of all applicants to Georgetown's undergraduate and graduate programs, including their admission and enrollment statuses,

    b.    payroll information for all university employees (though direct access was restricted), and

      c.      students' GRE and MCAT scores, along with percentile rankings.

51.     According to an email Georgetown's CIO sent to alumni early in the afternoon on October 17, only "student data" was available to unauthorized users. However, Georgetown has clarified and said that "student data" in this email referred to data relating to a person's time as a student from application for admission to the university until graduation.

52.     As a result of the Data Breach, Plaintiff spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity. Plaintiff spent time researching the Data Breach to confirm that her PII has been compromised.

53.     The Data Breach has caused the Plaintiff to suffer anxiety and stress from concerns that she faces an increased risk of financial fraud, identity theft, fraud and other types of monetary harm as a result of the stolen information. Plaintiff places significant value in the security of her PII and the confidentiality of the personal information entrusted to the Georgetown.

54.     Plaintiff and Class Members suffered actual damages as a result of the failures of Georgetown to adequately protect the sensitive information entrusted to it, including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, tax and medical fraud, the loss in value of their PII, the loss of confidentiality of the financial information and other economic and non-economic harm. Plaintiff and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identity theft.

55.     As a result of the Data Breach, Plaintiff has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature

of the PII compromised by the Data Breach. As mentioned above, Plaintiff also continues to suffer from anxiety and fear of financial fraud and identity theft.

**D.    Obligation to Secure and Safeguard Students and Alumni's PII**

56.    Georgetown has an obligation to secure and protect the PII of its students and

57.    alumni, which contains sensitive personal information such as Social Security numbers, tax ID information, as well as academic and admissions information, as well as familial and religious information.

58.    Georgetown's internal "Data Classification" system (UIS.401.3 Data Handling Guidelines) classifies data such as personally identifiable information, Social Security numbers, dates of birth, personal contact information, student records, and student admission data as "High" security data such that "[t]he loss of its confidentiality, integrity, or availability would cause significant harm to Georgetown's mission, security, finances, or reputation."

59.    Georgetown's Data Handling Guidelines directs university employees to maintain extra care for these records through secure platforms and printing services.

60.    According to Georgetown's Data Handling Guidelines, university employees are prohibited from storing sensitive data on personal or work computers. Such records must be retained only in the university's authorized storage system and must be purged or destroyed once they are no longer needed. In this case, data exposed dated back to the 1990s—information Georgetown should have purged or destroyed long ago.

61.    Further, under the federal Family Educational Rights and Privacy Act of 1974 ("FERPA"), as an educational institution, Georgetown may not release information about current or former students without the student's written consent, other than certain "directory

information," which includes names, addresses, contact information for students and their family and information at their time at Georgetown.

### E.    Data Security Failures Caused the Data Breach

62.    Georgetown breached its duties, obligations, and promises to Plaintiff and Class Members by failing to:

   a.    Properly monitor its systems, including the GU Experience platform (the Ellucian Banner);

   b.    Conduct proper maintenance and updates on its systems, including configuration changes on its Banner student information system;

   c.    Hire qualified personnel and establish accountability over data security, thereby knowingly allowing security deficiencies to persist;

   d.    Adequately train employees on maintaining its systems, safely modernizing Georgetown's network, and platform settings, including failing to provide security awareness training to address risks of common attack techniques, how to detect potential breaches, and how to prevent them;

   e.    Respond to well-known warnings that its systems and servers were vulnerable to a data breach;

   f.    Implement necessary protocols, such as multiple warnings during setting changes, that would have prevented the breach of personal information and safeguarded sensitive data.

   g.    Install software to effectively track access to its network, monitor for unusual activity, prevent data exfiltration, and protect sensitive PII from theft;

> h.    Adequately safeguard sensitive PII and maintain a robust data security environment to reduce the risk of a breach or unauthorized disclosure.

**F.    Data Security Failures Constitute Unfair, Deceptive Practices and Violations of Consumer Privacy.**

63.    The FTC considers the failure to implement reasonable and appropriate measures to safeguard against unauthorized access to sensitive personal information an unfair act or practice, as prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

64.    In 2007, the FTC issued guidelines outlining reasonable data security practices for businesses. These guidelines recommend that businesses protect personal customer information, properly dispose of unnecessary data, encrypt information on networks, assess network vulnerabilities, and implement vendor-approved patches. They also advise using intrusion detection systems to identify breaches promptly, monitoring incoming traffic for hacking attempts, watching for large data transmissions, and having a response plan in place for breaches.

65.    The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

66.    The FTC has issued orders against businesses that have failed to employ reasonable measures to secure sensitive personal information. These orders provide further guidance to businesses regarding their data security obligations.

67.    Georgetown failed to follow guidelines set forth by the FTC and actively mishandled the management of its IT security.

**G.    The Value of Disclosed PII and Consequences of Unauthorized Disclosure.**

68.     Georgetown understood the protected PII it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the PII, its students and alumni, and those who would use it for wrongful purposes.

69.     PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers.

70.     Sensitive PII is commonly stolen in data breaches has economic value. The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, stolen personal information is routinely posted on anonymous websites, making the information widely available to a criminal underworld. There is an active and robust market for this information.

71.     By accessing an individual's PII, bad actors can cause upheaval in the individual's life. They could withdraw funds from the bank accounts, get new credit cards or loans, lock the individual out of their own bank accounts or social media accounts, file false tax returns and destroy their credit score.

72.     Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

73.     The forms of PII involved in this Data Breach are particularly concerning. Unlike credit or debit card numbers in a payment card Data Breach—which can quickly be frozen and

reissued in the aftermath of a breach—unique Social Security and tax ID numbers cannot be easily replaced. Even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

74.    The Social Security Administration ("SSA") warns that the process of replacing a Social Security number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.

75.    Social Security numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit—among other services. Often Social Security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes Social Security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

76.    The ramifications of Georgetown's failure to keep Plaintiff's and Class Members' PII secure are long lasting and severe.

77.    To avoid detection, identity thieves often hold stolen data for months or years before using it.

78.    Thus, Georgetown knew or should have known the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if the PII was disclosed or unauthorizedly released. Georgetown failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

79.    As a highly sophisticated entity that handles sensitive PII, Georgetown failed to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and other Class Members' PII to protect against anticipated threats of intrusion of such information.

80.    Identity thieves use stolen PII for various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes, including credit card fraud, phone or utilities fraud, bank fraud and government fraud.

81.    The PII exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiff and Class Members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are which are other ways for cybercriminals to exploit information they already have in order to get even more personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

82.    There is often a lag time between when fraud occurs versus when it is discovered, and also between when PII is stolen and when it is used.

83.    According to the U.S. Government Accountability Office, which conducted a study regarding Data Breaches:

[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

84.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market for years.

85.     Plaintiff and Class Members rightfully place a high value not only on their PII, but also on the privacy of that data.

86.     Thus, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

**H.    Data Breach Damaged Plaintiff and the Class Members**

87.     According to research, sensitive PII can sell for as much as $363 per record. As a result of the Data Breach, Plaintiff's and Class Members' PII, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release.[2] However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the PII has been lost, thereby causing additional loss of value.

88.     As a result of Georgetown's deficient security measures, Plaintiff and Class Members are also under a constant threat of their PII being used by criminals for identify theft and other fraud-related crimes.

---

[2] Kaspersky, *Cybercriminals sell access to companies via the Dark Web from $2000* (June 15, 2022), https://www.kaspersky.com/about/press-releases/2022_cybercriminals-sell-access-to-companies-via-the-dark-web-from-2000.

89.    Plaintiff and Class Members face a substantial and imminent risk of fraud and identity theft as their names have now been linked with their Social Security numbers, date of birth, and physical addresses, among other data identifiers as a result of the Data Breach. These specific types of information are associated with a high risk of fraud.

90.    Many Class Members will also incur out of pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

91.    Plaintiff and Class Members also suffered a "loss of value" of their sensitive PII when it was exfiltrated in the Data Breach. A robust market exists for stolen PII. Cybercriminals sell PII on the dark web—an underground market for illicit activity, including the purchase of hacked PII—at specific identifiable prices. This market serves as a means to determine the loss of value to Plaintiff and Class Members.

92.    Identity thieves can combine data stolen in the Data Breach with additional information about Plaintiff and Class Members obtained from underground sources, public records, or social media accounts. This aggregated data enables thieves to send targeted phishing emails to obtain even more sensitive information. The combined data can facilitate various crimes, including opening new financial accounts, taking out loans, obtaining government benefits, filing fraudulent tax returns, and acquiring Social Security numbers under Plaintiff's and Class Members' names with another individual's photograph.

93.    Plaintiff and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud and the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are

94.    burdensome and time-consuming, especially because Georgetown has disclosed little information about the Data Breach, forcing customers to continue to monitor their accounts indefinitely.

95.    A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach.

96.    The risk of identity theft and fraud will persist for years, as identity thieves often retain stolen data for months or even years to avoid detection. Stolen PII available on the dark web can be used at any time by cybercriminals, potentially targeting Plaintiff and Class Members long after the initial breach.

## CLASS ACTION ALLEGATIONS

97.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Nationwide Class:

> **All persons in the United States whose PII was compromised in the Data Breach made public by Georgetown University in October 2024.**

98.    Excluded from the Class are Georgetown, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Georgetown has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

99.    Plaintiff reserves the right to modify, expand or amend the above Class definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

100.    Certification of Plaintiff's claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

101.    **Numerosity**. All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The Members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. There are likely hundreds of thousands of Members of the Class since scope of the information exposed in the Data Breach, in some instances, dates back to the 1990s, and Georgetown purports to have approximately 240,000 alumni. Although, the precise number of Class Members is unknown to Plaintiff it will be revealed through discovery in due course.

102.    Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

103.    **Commonality and Predominance.** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

      a.    Whether Georgetown engaged in active misfeasance and misconduct alleged herein;

      b.    Whether Georgetown owed a duty to Plaintiff and Class Members to safeguard their sensitive PII;

      c.    Whether Georgetown breached its duty to Plaintiff and Class Members to safeguard their sensitive PII;

21

d. Whether Georgetown knew or should have known that its data security systems and monitoring processes were deficient;

e. Whether Georgetown acted negligently in implementing the system updates and performing scheduled maintenance;

f. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of the Data Breach;

g. Whether Georgetown's failure to provide adequate security proximately caused Plaintiff's and Class Members' injuries; and

h. Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief.

104. **Typicality.** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of all Class Members because Plaintiff, like other Class Members, suffered theft of her sensitive personal information in the Data Breach.

105. **Adequacy of Representation.** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because she is a Member of the Class and his interests do not conflict with the interests of other Class Members that they seek to represent. Plaintiff is committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type and Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the Class's interests.

106. **Predominance and Superiority.** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's case will also resolve them for the Class's claims.

In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by the Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Georgetown, so it would be impracticable for Members of the Class to individually seek redress for Georgetown's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

107.    **Cohesiveness**. All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Georgetown has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

<u>**COUNT I**</u>
**NEGLIGENCE**
**(On behalf of Plaintiff and the Class)**

108.    Plaintiff re-alleges and incorporates by reference all of the allegations contained above as if fully set forth herein.

109.    Georgetown acquired the PII of the Plaintiff and Class Members. Upon information and belief, Georgetown collects this highly sensitive PII in the course of operating the university and providing educational services to students and alumni.

110.    By collecting and storing sensitive Personally Identifiable Information (PII), Georgetown had a common law duty of care to employ reasonable measures to secure and

safeguard this sensitive personal information, preventing its disclosure to unauthorized individuals. This duty encompassed the responsibility to implement processes that would enable timely detection of a data breach of this nature and magnitude.

111.    Georgetown owed a duty of care to the Plaintiff and Class Members to provide data security consistent with the various statutory requirements, regulations, and other notices described above.

112.    Georgetown was subject to an "independent duty" untethered to any contract between the Plaintiff and Class Members and Georgetown.

113.    Georgetown breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' valuable and sensitive PII.

114.    Georgetown's negligent acts and omissions include critical failures such as not implementing effective systems or educating employees on preventing unauthorized disclosures, failing to comply with industry standards for software and server security, and conducting inadequate updates during maintenance. The university neglected to restrict access to its GU Experience platform and Banner student information system, failed to monitor network access, and did not limit system access to authorized personnel. Additionally, Georgetown's data security operations were underfunded and understaffed, resulting in non-compliance with the FTC Act and FERPA. The institution also failed to properly purge unnecessary sensitive personal information and lacked due diligence in hiring and supervising data security personnel. Furthermore, Georgetown did not adequately recognize or respond to the unauthorized access and theft of PII during the data breach.

115.    Georgetown should have foreseen that failing to implement reasonable measures to protect sensitive Personally Identifiable Information (PII) could lead to harm for its students,

including the Plaintiff and Class Members. Additionally, actual and attempted data security breaches were reasonably foreseeable to Georgetown, considering the frequent occurrence of such incidents and various warnings from industry experts.

116.    As a direct and proximate result of Georgetown's negligence, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

## COUNT II
## NEGLIGENCE *PER SE*
### (On behalf of Plaintiff and the Class)

117.    Plaintiff re-alleges and incorporates by reference all of the allegations contained above as if fully set forth herein.

118.    Section 5 of the FTC Act prohibits "unfair...practices in or affecting commerce," which, as interpreted and enforced by the FTC, includes the unfair practice by companies like Georgetown of failing to implement reasonable measures to protect sensitive PII.

119.    Section 5 of the FTCA imposes a duty upon Georgetown.

120.    Georgetown violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards. Georgetown's conduct was particularly

121.    unreasonable given the nature and amount of PII it obtained and disclosed and the foreseeable consequences of a Data Breach.

122.    Plaintiff and Class Members are consumers within the class of individuals that Section 5 of the FTC Act was designed to protect.

123.    The harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses

which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

124.    As a direct and proximate result of Georgetown's negligence, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

125.    Georgetown's violation of Section 5 of the FTC Act constitutes negligence *per se*.

126.    Plaintiff's and Class Members are also entitled to injunctive relief requiring Georgetown to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Class)**

127.    Plaintiff re-alleges and incorporates by reference all of the allegations contained above as if fully set forth herein.

128.    Georgetown entered into contracts with the Plaintiff and Class Members as part of their application, enrollment, and educational engagement with the institution.

129.    Plaintiff and Class Members provided Georgetown with consideration in the form of tuition and other fees in exchange for their educational services.

130.    Plaintiff and Class Members were required to provide their PII to Georgetown as part of applying and enrolling as a student at Georgetown.

131.    By providing their PII and upon Georgetown's acceptance of this information, Plaintiff and the Class, on one hand, and Georgetown, on the other hand, entered into contracts for

the provision of data security, separate and apart from any express contract entered into between the parties.

132.    In exchange, Georgetown agreed, in part, to implement adequate security measures to safeguard the PII of Plaintiff and the Class and to timely and adequately notify them of the Data Breach.

133.    These contracts were expressly intended to benefit the Plaintiff and Class Members, as they were the primary beneficiaries of the agreements between Georgetown and its students. Georgetown understood that any breach of these contracts would harm its students, including the Plaintiff and Class Members.

134.    The implied contracts between Georgetown and Plaintiff and Class Members obligated Georgetown to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiff's and Class Members' PII. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above.

135.    Upon information and belief, Plaintiff and Class Members were the express, foreseeable, and intended beneficiaries of valid and enforceable contracts between Georgetown and applicants, students, and alumni that included obligations to protect, safeguard, and keep secure the PII of the Plaintiff and Class Members.

136.    Georgetown was required to implement the necessary security measures to safeguard the PII of Plaintiff and Class Members and not take unjustified risks when storing the PII.

137.    Plaintiff and Class Members reasonably believed and expected that Georgetown's data security practices complied with relevant laws, regulations, and industry standards.

138.    Georgetown breached these implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the PII belonging to Plaintiff and Class Members, and allowing unauthorized persons to access Plaintiff's and Class Members' PII.

139.    As a direct and proximate result of Georgetown's breaches of the implied contracts, Plaintiff and Class Members have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of PII and are entitled to damages in an amount to be proven at trial.

140.    Plaintiff and Class Members were harmed by Georgetown's conduct as a direct and proximate result of Georgetown's breach of its contracts with its students and are entitled to the damages they have sustained. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

141.    Plaintiff and Class Members are also entitled to injunctive relief requiring Georgetown to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

142.    Plaintiff re-alleges and incorporates by reference all of the allegations contained above as if fully set forth herein.

143.    The Plaintiff and Class Members provided Georgetown with monetary benefits by sharing their PII and paying for access to Georgetown's educational services.

144.    Georgetown acknowledged and accepted the monetary benefits conferred by the Plaintiff and Class Members, retaining both the payments and the PII entrusted to it. Georgetown profited from this retained data, utilizing the Plaintiff's and Class Members' PII in its operations.

145.    The payments made to Georgetown were intended, in part, to fund and maintain adequate data privacy infrastructure, practices, and procedures.

146.    Georgetown should not be allowed to retain the funds paid by the Plaintiff and Class Members, as it failed to establish, implement, or adequately uphold the data privacy and security practices that these payments were intended to support and that are required by federal, state, and local laws as well as industry standards.

147.    As a result of Georgetown's conduct, Plaintiff's and Class Members have been injured as alleged herein.

148.    Georgetown should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

149.    Plaintiff and Class Members may lack an adequate legal remedy against Georgetown and, therefore, assert this claim for unjust enrichment as a supplementary or alternative cause of action to the other claims presented.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of all others similarly situated, requests that the Court enter judgment against Georgetown including the following:

A.    An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing the undersigned as Class Counsel, and finding that the Plaintiff are a proper representative of the proposed Class;

B.      For injunctive and other equitable relief as necessary to protect the interests of the Plaintiff and the Class;

C.      For an award of compensatory, consequential, and general damages, including nominal damages, as allowed by law in an amount to be determined;

D.      For an award of restitution or disgorgement, in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: November 5, 2024                        Respectfully submitted,

                                               /s/ Hassan A. Zavareei
                                               Hassan A. Zavareei (Bar No. 456161)
                                               David W. Lawler (*pro hac vice to be filed*)
                                               Sabita J. Soneji (*pro hac vice to be filed*)
                                               2000 Pennsylvania Avenue NW
                                               Suite 1010
                                               Washington, D.C. 20006
                                               Telephone: (202) 973-0900
                                               Facsimile: (202) 973-0950
                                               Email: hzavareei@tzlegal.com
                                               dlawler@tzlegal.com
                                               ssoneji@tzlegal.com

                                               *Counsel for Plaintiff and the Proposed Class*